UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:16-CR-78-HAB |
| | ) | |
| JAMAR FREEMAN | ) | |

## OPINION AND ORDER

Jamar Freeman ("the Defendant") filed a motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A) along with a letter in support (ECF Nos. 345, 346).[1] The Government filed its response to his Motion on September 17, 2020. (ECF No. 350). For the following reasons, the Defendant's Motion will be DENIED.

## PROCEDURAL BACKGROUND

On November 18, 2016, the Defendant was charged in a single count Superseding Indictment for attempted bank robbery by force or violence involving kidnapping during a bank robbery and aiding and abetting in violation of 18 U.S.C. §2113(a), (d) and (e), and 18 U.S.C. §2. This charge stemmed from events occurring on April 11, 2016, when the Defendant and two co-defendants attempted to rob the First Source Bank.  The details of the robbery attempt are spelled out in the Presentence Investigation Report (ECF No. 278, ¶¶s 9–39). It suffices to say that the robbery attempt was violent; an employee was struck in the face with a semi-automatic weapon, Defendant threatened the First Source Bank employee by asking if he wanted a "bullet in the head"

---

[1] Pursuant to this Court's General Order 2020-11, the Court referred the letter to the Northern District of Indiana Federal Community Defenders, Inc.  ("FCD") for it to consider representing the defendant with respect to his motion. (ECF No. 348). On September 3, 2020, the FCD filed a Notice indicating that it would not be appearing on the Defendant's behalf. (ECF No. 349). Consistent with the Court's order, the Government responded to Defendant's *pro* se motion. (ECF No. 350).

and if he "wanted to die." Ultimately, the robbery attempt was foiled, and the Defendant arrested. (*Id.*).

After pleading guilty on November 6, 2018, pursuant to written plea agreement with the government, Defendant was sentenced to 130 months of imprisonment and two years of supervised release. (ECF No. 288). The Defendant is currently housed at FCI Elkton.

## DISCUSSION

The Defendant's Motion requests compassionate release. Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which allows a court to grant an inmate compassionate release if the inmate meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A). Under this provision, a court may not modify a term of imprisonment except that –

(1) in any case --

   (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . finds that—

(i) extraordinary and compelling reasons warrant such a reduction …

… and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

Because the Defendant, not the Director of the BOP, filed the motion, the Government asserts that the Defendant must first demonstrate that he meets the statutory exhaustion requirement to proceed further, and he has not done so here. In his motion, however, the Defendant states that he "requested compassionate release from the Warden at FCI Elkton on 4/6/20 and

7/22/20," (Motion at p. 3), but that the Warden has not responded. The Government asserts that BOP records do not support the Defendant's claim that he has exhausted his remedies.

This Court has previously held that § 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional, *see United States v. Hayden*, No. 1:07-CR-68-HAB, 2020 WL 2079293, at *1 (N.D. Ind. Apr. 30, 2020); see also *United States v. Santiago*, No. 2:16-CR-174-JVB-JEM, 2020 WL 3396899, at *2 (N.D. Ind. June 19, 2020); *United States v. Council*, No. 1:14-CR-14-5-TLS-SLC, 2020 WL 3097461, at *4 (N.D. Ind. June 11, 2020); *United States v. Cox*, No. 4:18-cr-17-TWP-VTW-1, 2020 WL 1923220, at *3 (S.D. Ind. Apr. 21, 2020). Thus, the Defendant's motion is properly adjudicated in this Court regardless of whether he has or has not completed the statutory exhaustion process.[2]

This Court has repeatedly declined to weigh in on whether the exhaustion requirement is a mandatory one or subject to equitable considerations, such as waiver. *See United States v. Russell*, No. 1:14-CR-6-HAB, 2020 WL 2989160, at *3 (N.D. Ind. June 4, 2020) ("District courts across the country are struggling daily with whether strict compliance with the exhaustion provision is necessary, especially in light of the serious risks associated with COVID-19.") (listing cases). Because of the absence of clear precedent on exhaustion, this Court's preference has been to "put to the side the thorny issue of exhaustion to tackle the easier issue" of whether the defendant has presented extraordinary and compelling reasons to warrant a sentence reduction. *United States v. Wolfe*, 1:15-cr-169, 2020 WL 2615010, at *2 (S.D. Ind. May 22, 2020); *Council*, 2020 WL 3097461, at *5. This case is no different.

---

[2] The Court is aware that the Government resists the argument that § 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional and has, in all other compassionate release cases in this division, reserved its right to contest this issue.

The Defendant asserts that he has anxiety and depression which has worsened during his incarceration. He also complains of an unresolved heart condition from birth and states he was on a heart monitor.[3] He indicates he still has "muscle complication" in his heart causing "tightness, minor pain and short breaths." (Letter, p. 1, ECF No. 346). He also has concerns that he cannot maintain appropriate social distance while incarcerated and indicates that the FCI Elkton has a high rate of COVID-19 infection.

Congress did not define "extraordinary and compelling reasons" in the statute, instead delegating the matter to the Sentencing Commission to promulgate a policy statement that "describe[s] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The policy statement, contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes, in line with the statutory directive in § 3582(c)(1)(A), requires a court to make several findings.

First, the court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). To this end, a court is to consider the medical condition of the defendant, his age, his family circumstances, and whether there exists in the defendant's case an extraordinary or compelling reason "other than or in combination with" the other reasons described in the Application Notes. Second, the Court must determine whether the Defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

---

[3] Paragraph 80 of the Defendant's presentence report indicates that the Defendant reported sporadic tight pains in his chest due to an "unresolved heart issue from birth." (ECF No. 278).

Additionally, when the Defendant moves for a reduction based on COVID-19, Courts have also considered: (1) the specificity of the defendant's COVID-19 concerns, (2) whether the defendant has a medical condition that makes him especially susceptible to the dangers of COVID-19, and (3) the extent that the defendant's release would mitigate or aggravate the COVID-19 pandemic. *See Council*, 2020 WL 3097461, at *5–7; *United States v. Barrett*, No. 2:17-CR-1, 2020 WL 3264112, at *3 (N.D. Ind. June 17, 2020); *see also United States v. Davis*, No. 2:19-CR-74-3, 2020 WL 1951652, at *1–2 (N.D. Ind. Apr. 23, 2020) (applying similar factors to consider whether there was a "compelling reason" for pretrial release due to the COVID-19 pandemic). In the context of the COVID-19 pandemic, "§ 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the individuals' particular circumstances of where he is housed and his personal health conditions." *See Council*, 2020 WL 3097461, at *5; *United States v. Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D.Ill. May 12, 2020). !

In this case, the Defendant's filings give this Court very few reasons, let alone extraordinary or compelling ones, to justify granting his motion. The Defendant has not articulated any medical condition that makes him more susceptible to the virus nor has he provided any basis for the Court to conclude that he suffers from a serious condition that increases the likelihood of severe consequences from COVID-19. While the Defendant claims to have some sort of undiagnosed cardiac issue, he has presented nothing to the Court to substantiate the existence of any cardiac condition or even any records to confirm that his self-reported symptoms of chest tightness have been documented by any medical professionals. Further, anxiety and depression, both of which understandable in the prison setting, are not factors identified by the CDC in contributing to an increase risk of severe or serious illness from COVID-19.

It is also not lost on the Court that Defendant is housed at FCI Elkton, where earlier this year conditions deteriorated to the point that the United States District Court for the Northern District of Ohio ordered the BOP to identify medically vulnerable individuals and expedite their transfer from the facility, either to another facility or supervised release. *See Wilson v. Williams*, 2020 WL 1940882 (N.D. Ohio April 22, 2020), *vacated*, 961 F.3d 829 (6th Cir. 2020). Since the beginning of the outbreak, FCI Elkton has reported 946 positive tests,[4] the second most of all the facilities in the BOP. While the facility only reports 2 active cases among inmates and 0 among staff as of the date of this Opinion,[5] it is unclear whether that is the result of any action taken by the BOP or simply the result of the virus having run through all its potential hosts. In any event, there is nothing about FCI Elkton's handling of the outbreak to date that leaves the Court with any confidence that it could handle a future flare up of COVID-19. *See, Melgarejo*, 2020 WL 2395982, at *3 ("[A] prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus.").

However, Defendant has managed to live through the worst of times at FCI Elkton without contracting the virus. This shows that, even when the virus was running wild through the facility, it was possible to avoid infection. Cases are down precipitously now, and any future outbreak is speculative. Whatever specter the phrase "FCI Elkton" once carried is significantly diminished now.

Finally, the Court considers the danger the Defendant poses to society and the § 3553(a) factors. The Court observes that the offense conduct in this case was severe; the Defendant and

---

[4] https://www.bop.gov/coronavirus/
[5] *Id*.

6

his co-defendants threatened to shoot two bank employees and struck one of the employees in the face with a semi-automatic pistol, all to further a bank robbery that went bust. This conduct demonstrates a callous disregard for the lives of these citizens and this Court is not at all convinced that the Defendant is no longer a danger to the community after serving only a portion of his 130-month sentence. If the offense conduct were not enough evidence by itself, the Defendant's BOP disciplinary history seals the deal. As the Government points out, those records demonstrate that the Defendant assaulted two inmates because they "said false things" about him and, just this past July 30, 2020, the Defendant wrote aggressive letters to prison staff as well as to another inmate threatening physical harm to them. In short, the Defendant's sentence was imposed to reflect the seriousness of the offense, promote respect for the law as well as to afford adequate deterrence and to protect the public from further crimes of the defendant. Here, the Court finds that the significant sentence reduction Defendant seeks would greatly undermine the above statutory purposes of sentencing.

Because this Court does not find extraordinary and compelling circumstances exist for the Defendant's release and a reduction of sentence is inconsistent with the § 3553(a) factors, Defendant does not meet the criteria for compassionate release and his motion is DENIED.

## **CONCLUSION**

Based on the foregoing, the Defendant's Motion (ECF No. 345) is DENIED. So ORDERED on October 8, 2020.

s/ *Holly A. Brady*  
JUDGE HOLLY A. BRADY  
UNITED STATES DISTRICT COURT

7