UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CASE NO.: 1:16-CR-78-HAB |
| ) | |
| JAMAR FREEMAN ) | |

**OPINION AND ORDER**

On March 27, 2019, Defendant, Jamar Freeman, then age 27, received a 130-month sentence for an attempted armed bank robbery he committed just after his 24th birthday. Now, for the second time, he moves for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i), arguing that extraordinary and compelling reasons exist for a sentence reduction. The motion has been fully briefed (ECF Nos. 370, 381, 382) and is ripe for ruling. Because he has again not demonstrated extraordinary and compelling reasons for a sentence reduction, his motion will be DENIED.

**I.     Factual and Procedural Background**

As this Court noted in Freeman's first compassionate release request, on November 18, 2016, the Defendant was charged in a single count Superseding Indictment for attempted bank robbery by force or violence involving kidnapping during a bank robbery and aiding and abetting in violation of 18 U.S.C. §2113(a), (d) and (e), and 18 U.S.C. §2.

This charge stemmed from events occurring on April 11, 2016, when the Defendant and two co-defendants attempted to rob the First Source Bank. The details of the robbery attempt are spelled out in the Presentence Investigation Report (ECF No. 278, ¶¶s 9–39). It suffices to say that the robbery attempt was violent; an employee was struck in the face with a semi-automatic weapon, Defendant threatened the First Source Bank employee by asking if he wanted a "bullet in the head"

and if he "wanted to die." Ultimately, the robbery attempt was foiled, and the Defendant arrested. (*Id.*).

After pleading guilty on November 6, 2018, pursuant to written plea agreement with the government, Defendant was sentenced to 130 months of imprisonment and two years of supervised release. (ECF No. 288). The Defendant is currently housed at FCI Hazelton with an anticipated release date of April 19, 2026.

## **DISCUSSION**

The Defendant's Motion requests compassionate release. Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which allows a court to grant an inmate compassionate release if the inmate meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A). Under this provision, a court may not modify a term of imprisonment except that –

(1) in any case --

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . finds that—

(i) extraordinary and compelling reasons warrant such a reduction …

… and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

Because the Defendant, not the Director of the BOP, filed the motion, he must first show that he has satisfied the statutory exhaustion requirement. The Government concedes that Defendant has properly exhausted his remedies. (ECF No. 381 at 8).

Congress did not define "extraordinary and compelling reasons" in the statute, instead delegating the matter to the Sentencing Commission to promulgate a policy statement that "describe[s] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The policy statement, in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes, have not been amended to reflect the First Step Act's change to § 3582(c)(1)(A) allowing prisoners to bring compassionate release claims directly. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)[1]. As a result, "§ 1B1.13 and its application notes provide useful – but not binding – guidance to courts in determining whether a defendant has identified an extraordinary and compelling reason for compassionate release." *United States v. Hoskins*, No. 2:99 CR 117, 2020 WL 7640408, at *2 (N.D. Ind. Dec. 23, 2020) (citing *Gunn*, 938 F.3d at 1180). Indeed, "[d]istrict judges must operate under the statutory criteria–'extraordinary and compelling reasons'–subject to deferential appellate review." *Gunn,* 980 F.3d at 1181.

Using the guidance of §1B1.13 to inform the statutory criteria, the court considers the medical condition of the defendant, her age, her family circumstances, and whether there is in the defendant's case an extraordinary or compelling reason "other than or in combination with" the other reasons described in the Application Notes. Second, the Court determines whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court considers the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

---

[1] Yet as *Gunn* made clear, the Guidelines' requirement that the court consider whether the reduction is otherwise "consistent with this policy statement" does not limit a district judge's discretion. This is because the statute by which the district court is bound requires a reduction to track "applicable policy statements." And the Sentencing Commission has not yet issued a policy statement "applicable" to Defendant's request. Thus, *Gunn* held, "[a]ny decision is 'consistent with' a nonexistent policy statement." *Gunn*, 980 F.3d at 1180

### A. *Defendant Cannot Show Extraordinary and Compelling Reasons for Release*

In considering Freeman's request, "a district court's analysis, at a minimum, must reasonably assure [the Seventh Circuit] that it at least considered the prisoner's principal arguments." *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022). To that end, Freeman offers several reasons that he believes are extraordinary and compelling entitling him to compassionate release. Defendant first argues that his medical conditions, including his hypertension, obesity, anxiety and depression, and an undiagnosed heart condition, are extraordinary and compelling reasons for his release. Second, he argues that his youthful age at the time of the offense, rehabilitation efforts, and family circumstances are so extraordinary as to warrant release.

#### 1. Freeman's Medical Conditions do not Support Compassionate Release

Turning first to Freeman's medical conditions and his concerns that they make him more vulnerable to COVID-19 infections, there is simply no support in the record for such a conclusion. Freeman's BOP medical records confirm that he is hypertensive, obese, and has been diagnosed with an anxiety disorder. All these conditions, however, are being well-managed and controlled by the BOP. He is on a medication regimen for his blood pressure and anxiety and there is no indication in his medical file that those medications are insufficient to treat his conditions. Further, Freeman has not identified any current medical issues from his obesity that negatively impact his health.

Freeman also contends that he has a heart condition. He has provided no medical confirmation demonstrating the existence of such a condition and as the Government points out, Freeman's records show normal cardiac function in 2019, and twice in 2020. Thus, Freeman has not established he suffers from any heart condition, let alone an extraordinary one.

Moreover, vaccines have all but eliminated COVID-19 as a basis for compassionate release under 18 U.S.C. § 3582(c)(1)(A). In *United States v. Broadfield*, 5 F.4th 801 (7th Cir. 2021), the court stated:

> Section 3582(c)(1)(A) was enacted and amended before the SARS-CoV-2 pandemic, and it will continue to serve a beneficent function long after the pandemic ends. But for the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer relief far more effective than a judicial order. A prisoner who can show that he is unable to receive or benefit from a vaccine still may turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an "extraordinary and compelling" reason for immediate release.

*Id*.

More recently, in *United States v. Clemons*, 2022 WL 1436801 (7th Cir. May 6, 2022), the Seventh Circuit declined to revisit *Broadfield*. In that case, Clemons asserted that the CDC's "understanding of vaccines has changed, and new variants are more likely to infect people who have been vaccinated or, like him, previously infected." *Id.* at *1. The court, not moved by this argument, reaffirmed *Broadfield* holding: "Despite the threat of new coronavirus variants, we reiterate that an inmate's risk of COVID-19 cannot justify compassionate release absent an inability 'to receive or benefit from a vaccine.'" *Clemons*, 2022 WL 1436801 at *2 (quoting *Broadfield*, 5 F.4th at 803).

Freeman is vaccinated, having received the Moderna vaccine on August 18, 2021, and October 7, 2021. He has not presented any evidence from which the Court could conclude that despite his vaccination status he remains vulnerable to severe infection due to his diagnosed medical conditions. *See United States v Rucker,* 27 F.4th 560, 563 (7th Cir. 2022) (identifying the Omicron variant and stating that *Broadfield* "included a safety valve for prisoners to show that they are unable to receive or benefit from a vaccine, or that they remain vulnerable to severe

5

infection, notwithstanding the vaccine."). The Government also recites the aggressive efforts by the BOP to mitigate the effects of COVID 19 in its facilities. As it stands, there is no basis to conclude that either Freeman's underlying medical conditions or the institutional conditions justify compassionate release.

2. **The Defendant's Age, Family Circumstances and Rehabilitative Efforts are not Extraordinary and Compelling.**

Next, Freeman asserts that his youth at the time of his offense, his current family circumstances, and his rehabilitative efforts all support his request for relief.

Turning first to his youthful age at the time of his offense, the Supreme Court instructs that "youth matters in sentencing." *Jones v. Mississippi*, —— U.S. ——, 141 S.Ct. 1307, 1314 (2021); See also *Miller v. Alabama,* 567 U.S. 460, 472 (2012) ("[T]he distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes."). Freeman states that he was only 24 at the time of the bank robbery and "the stressor's [sic] within his life combined with the immaturity and under-development of the brain" factored into his impulsive judgment. (ECF No. 370 at 6). He cites to *United States v. Ramsay,* 538 F. Supp. 3d 407, 409 (S.D.N.Y. 2021), for the proposition that "an offender's youth, combined with society's evolving understanding of the adolescent brain" can warrant an extraordinary reason for compassionate release. *See also United States v. Espino*, 2022 WL 4465096, at *1 (D. Kan. Sept. 26, 2022) (same); *United States v. Morris,* 2022 WL 3703201, at *1 (D. Conn. Aug. 26, 2022).

Freeman is correct that recent case law "draw[s] on recent developments in neuroscience, psychology, and sociology, which demonstrate why standard penological goals apply with much less force to younger defendants in light of their immaturity, susceptibility to peer and other influences, salvageability, and dependence on family and other features of their environment that

6

lie beyond their control." *United States v. Golding*, 2022 WL 2985014, at *2 (S.D.N.Y. July 27, 2022). But Freeman's case is distinct from the cases recognizing a defendant's youth as a factor in granting compassionate release. At age 24 at the time of the offense (and age 27 at sentencing), Freeman was older than the adolescents considered in his cited case law. Further, the adolescents in those cases received steep or mandatory life sentences under pre-*Booker*[2] guidelines which required those outcomes, see *Ramsay*, 538 F. Supp. 3d at 407 (life imprisonment); *Espino*, 2022 WL 4465096, at *1 (life imprisonment); *Morris,* 2022 WL 3703201, at *1 (multiple life sentences*); United States v. Williams*, 2022 WL 1488695, at *1 (E.D.N.Y. May 11, 2022) (160 years and 8 months). Freeman, however, was sentenced under the post-*Booker* advisory guideline regime and the Court could and did consider the impact of both Freeman's upbringing and his relative youth at the time of his sentencing in 2019. In fact, the Court sentenced Freeman to a below-guidelines sentence of 130 months. Simply put, while the Court can fathom circumstances where an offender's youthful age would constitute an extraordinary and compelling reason to reduce a sentence, those circumstances are not presented here.

Nor does Freeman's age, even in combination with his rehabilitation efforts, get him to a reduced sentence. A defendant's "rehabilitation ... alone shall not be considered an extraordinary and compelling reason" warranting a sentence reduction, 28 U.S.C. § 994(t); rehabilitation may, with other factors, contribute to a finding that such circumstances exist. But here, while the Court acknowledges Freeman's programming and employment efforts, these efforts are offset by a

---

[2] *The* Sentencing Guidelines have been advisory ever since the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005). However, "[o]n [a motion to reduce sentence], the district court must consider the § 3553(a) factors; it may look to, but is not bound by, the mandatory minimums that the defendant would face if being sentenced for the first time under revised guidelines or statutes." *United States v. Rose*, 837 Fed. App'x 72, 73–74 (2d Cir. 2021). Thus, in the cases cited by Freeman that reviewed pre-*Booker* sentences, the Courts analyzed the defendant's youthful age under the §3553(a) factors to determine the reduced sentence.

handful of disciplinary issues in the little over 3 years that Freeman has been at a BOP facility. In April 2020 the Defendant assaulted two inmates because they "said false things" about him; on July 30, 2020, the Defendant wrote aggressive letters to prison staff as well as to another inmate threatening physical harm to them. He was sanctioned in August 2020 for refusing a work assignment, and again in February 2021 for his treatment of staff. In the face of this history, Freeman's rehabilitation efforts, while commendable, do not move the needle in his favor.

Finally, Freeman argues that he desires to alleviate the burden imposed on his child's mother by having to raise his daughter as a single parent. He notes that since COVID, the child's mother has fallen on tough times with employment and child care. (ECF No. 370 at 15). The Sentencing Guidelines policy statement related to compassionate release does mention family circumstances as a basis for compassionate release. U.S.S.G. § 1B1.13 n.1. This policy statement and its definitions are not binding, but it provides useful guidance to the district courts. *Gunn*, 980 at 1180. The family circumstances section of this statement states the following should be considered extraordinary and compelling reasons:

> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner."

U.S.S.G. § 1B1.13 n.1.

As Freeman's daughter has a capable caregiver, the statement does not provide direct guidance on his case. Further, the Court, in utilizing its discretion to interpret what constitutes an extraordinary and compelling reason, does not find Freeman's desire to be present to provide guidance to his daughter constitutes an extraordinary and compelling reason. Freeman's desire to care for his child is natural and commendable, but it is not extraordinary as it is certainly an issue faced by many individuals who are incarcerated. *See United States v. Richardson*, 2021 WL

8

533693, *3 (S.D. Ind. Feb. 5, 2021) (finding a father's desire to care for his children was not an extraordinary and compelling reason); *see also United States v. Martin*, 2022 WL 103831, *6 (S.D. Ind. Jan. 10, 2022) (finding defendant's desire to care for an ill family member was not an extraordinary or compelling reason). Consequently, this does not serve as a reason to modify Freeman's sentence.

### 3. Defendant's Reasons are not Extraordinary or Compelling Alone or in Combination

As discussed above, none of the Defendant's reasons for compassionate release are extraordinary or compelling on their own. The Court has considered the reasons together and finds them no more worthy of compassionate release. *United States v. Newton*, 996 F.3d 485, 489 (7th Cir. 2021) (finding that proposed extraordinary and compelling reasons must be considered cumulatively).

Finding no extraordinary or compelling reasons for release, the Court need not consider the § 3553(a) factors. *United States v. Ugbah*, 4 F.4th 595, 598 (7th Cir. 2021).

### CONCLUSION

Based on the foregoing, the Defendant's Motion (ECF No. 370) is DENIED.

So ORDERED on November 21, 2022.

s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT